UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BRIAN TODD DUMPHORD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 20-461-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| TROOPER JACK GABRIEL, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Brian Dumphord alleges that two Kentucky State Police troopers detained him without cause, beat him, and caused a police canine to attack him. He claims that he has sustained numerous injuries as a result of the officers' conduct and seeks damages via this civil lawsuit. However, criminal charges arising out of this encounter with police are pending against Dumphord in state court. Multiple defendants have filed motions to dismiss Dumphord's claims, while Dumphord seeks to stay this action pending resolution of his criminal charges.

For the reasons outlined in this opinion, Dumphord's claims against the defendants in their official capacities will be dismissed on sovereign and governmental immunity grounds. However, the plaintiff's individual-capacity claims that are intertwined with the underlying criminal charges will be stayed pending resolution of the criminal case in state court. Dumphord's claims against healthcare providers for failure to adequately treat his injuries will be allowed to proceed at this time. Finally, Dumphord will be permitted to amend his Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

- 1 -

## I.     Background[1]

Dumphord alleges that he drove to Paris, Kentucky, to visit a friend on November 15, 2019. [Record No. 1, ¶ 15] Kentucky State Police ("KSP") Trooper Jack Gabriel was on patrol in Paris that evening. *Id.* ¶ 17. As Dumphord traveled along Main Street, Gabriel exited a parking lot and began to follow him. Dumphord contends that his license and registration were up-to-date and that he did not commit any traffic infractions. *Id.* ¶¶ 17-21. Allegedly, Gabriel was familiar with Dumphord and his red Ford Expedition because Gabriel had stopped Dumphord and searched the same vehicle in June 2017. *Id.* ¶ 16. Further, Gabriel "knew [Dumphord's] prior criminal record." *Id.* ¶ 19.

Gabriel continued to follow Dumphord as he arrived at his friend's residence and traveled down a side street to park. *Id.* ¶ 30. According to the plaintiff, Gabriel parked behind him without activating his lights or siren. Gabriel then quickly walked up to Dumphord and slammed the door on his foot as he was leaving his car. *Id.* ¶ 33. When Dumphord asked why he was being stopped, Gabriel advised him that he was illegally parked. *Id.* ¶ 39.

Gabriel then told Dumphord that he was going to complete a courtesy warning and "he would be on his way shortly." *Id.* Gabriel returned to his cruiser and called dispatch to check Dumphord's license and insurance and to confirm that he did not have any outstanding warrants. *Id.* ¶ 41. He also called for KSP Trooper Joseph Kenney to come to the scene.[2]

---

[1]     When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged as true and makes all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, the factual background is a summary of the plaintiff's version of events as stated in the Complaint.

[2]     The parties have spelled this defendant's surname "Kenney," "Kennedy," and "Kenny" in various filings. The plaintiff uses "Kenney" in the caption of the Complaint, so the Court will use that spelling here.

Prior to Kenney's arrival, Gabriel completed a field sobriety investigation. *Id.* ¶ 42. He also requested permission to search the plaintiff's vehicle, but Dumphord declined. *Id.* ¶ 44. According to Dumphord, Gabriel then advised him: "[W]e about to f__ck you up." *Id.* ¶ 45.

At this time, Kenney arrived at the scene without activating his lights or siren. *Id.* ¶ 45. Gabriel ordered Dumphord to exit his car as he "pulled [Dumphord] out of the car and slam[med] him up against the car." *Id.* ¶ 46. Dumphord asserts that, once he was fully out of the vehicle, both officers slammed him against the car and Gabriel choked him. *Id.* ¶ 48. Gabriel then began to frisk Dumphord "on the public corner." *Id.* ¶ 53. At some point during the pat-down, Gabriel "claim[ed] he felt drugs" and the officers "pinned [the plaintiff] against the vehicle." *Id.* ¶ 59. According to Dumphord, he could not breathe because of the pressure being exerted upon him. The officers advised Dumphord that he was being placed under arrest. *Id.* ¶ 62.

Next, Dumphord alleges that Trooper Kenney attempted to body slam him, but fell, taking both men to the ground.[3] *Id.* ¶ 65. While Kenney had his arms and legs wrapped around Dumphord, Gabriel pressed a button on his belt to release Pluto, a police canine, from his vehicle. *Id.* ¶ 68. And Gabriel commanded Pluto to attack Dumphord. *Id.* ¶ 69. Dumphord reports that he tried to get away from the dog, but fell.[4] However, Pluto began biting

---

[3]  Dumphord does not describe the events immediately preceding the alleged body slam, but indicates that "[a]n arresting officer has the duty to inform the accused of his intention to arrest him and of the offense charged against him, and if the officer fails to do so the person about to be arrested may resist, unless he has knowledge of the warrant for his arrest." [Record No. 1, ¶ 63]

[4]  Dumphord disputes the officers' use-of-force report, which alleges that "Trooper Kenny attempted to restrain Mr. Dumphord, but he slipped out of his jacket and began to flee south from Boone Street." *Id.* ¶ 74.

Dumphord and Gabriel shot Dumphord with his Taser. *Id.* ¶¶ 78-79. Dumphord contends that he blacked out and, when he regained consciousness, Gabriel was striking him with his baton. *Id.* ¶ 82. Pluto was released again at which time he bit Dumphord's wrist. *Id.* ¶ 83.

Finally, while Pluto was still grasping Dumphord by one arm, Gabriel struck Dumphord with his baton and Kenney deployed his Taser. *Id.* ¶ 85. After using his Taser twice, Kenney began striking Dumphord with his baton. *Id.* ¶ 86. Pluto was deployed one last time and Dumphord was placed in handcuffs as the dog was biting him. *Id.* ¶ 87. The officers placed Dumphord on the sidewalk, "bleeding profusely, and in agony." *Id.* ¶ 90.

Dumphord claims that he was then transported to Bourbon Community Hospital by ambulance where he was treated by Dr. Sandra F. Geile, M.D. *Id.* ¶ 102. He "told [Geile] over and over [that] his wrist was broken," but "[n]o imaging was performed." *Id.* ¶ 103. After being released from jail on November 16, 2019, Dumphord went to the University of Kentucky emergency department where he was treated by Jonathan Bronner, M.D. *Id.* ¶ 107. Imaging of his left wrist and hand revealed that he had sustained an ulnar fracture. On December 30, 2019, Dumphord underwent surgery at the University of Kentucky to repair the fracture. *Id.* at 119.

Although Dumphord does not mention it in his Complaint, records from Bourbon County Circuit Court indicate that, on December 3, 2019, he was charged with trafficking in a controlled substance (first degree, second or greater offense); tampering with physical evidence; assaulting a police officer (third degree); resisting arrest; and fleeing or evading police (second degree). [Record No. 27-2] These charges remain pending in Bourbon Circuit Court; a trial date has not yet been set. It is undisputed that the charges arise from the encounter with Troopers Gabriel and Kenney on November 15, 2019.

On November 15, 2020, Dumphord filed suit in this Court, alleging the following claims under 42 U.S.C. § 1983: unlawful/unreasonable stop, arrest, and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution; excessive force; and supervisory liability.  Dumphord also asserts related claims under state law for assault and battery; excessive force; false imprisonment; intentional infliction of emotional distress; negligence and gross negligence; negligent supervision, training, and hiring; and malicious prosecution.

The plaintiff named a host of defendants in his 63-page Complaint, including Gabriel and Kenney in both their individual and official capacities as KSP Troopers.  Dumphord also named Rodney Brewer, individually and in his official capacity as Commissioner of the Kentucky State Police; Sonny Dunaway, individually and in his official capacity as Sergeant of the Special Operations Troop; Chad Mills, individually and in his official capacity as Captain and Post Commander of Department of Kentucky State Police Post 6; and the Commonwealth of Kentucky Justice and Public Safety Cabinet, and the Department of Kentucky State Police.   Dumphord also asserts "failure-to-treat" claims against Bourbon Community Hospital and  Sandra F. Geile, M.D.

Several motions are pending for resolution.  On December 4, 2020, the Justice and Public Safety Cabinet and Kentucky State Police, Gabriel, Kenney, Brewer, Dunaway, and Mills, each in his official capacity, (collectively, "the KSP defendants"), filed a motion to dismiss for failure to state a claim.  [Record No. 8]  Then, on December 18, 2020, Bourbon Community Hospital filed a motion to dismiss for failure to state a claim.  [Record No. 17] On December 21, 2021, Defendant Gabriel filed a motion to dismiss Dumphord's individual-capacity claims against him.  [Record No. 20]  The remaining KSP defendants filed a motion

to dismiss Dumphord's individual-capacity claims against them the same day. [Record No. 19]

Additionally, Dumphord has filed a motion to amend his Complaint regarding the allegations against Bourbon Community Hospital. [Record No. 32] He also seeks to stay this action pending resolution of the criminal proceedings pending in state court. [Record No. 27]

## II. Discussion

### A. Defendant's Motion to Stay

The majority of Dumphord's claims against the KSP defendants in their individual capacities implicate matters that are likely to be at issue during the criminal proceedings in state court. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a plaintiff cannot pursue a civil claim where recovery on that claim would imply the invalidity of a criminal conviction unless that plaintiff first establishes that the conviction has been overturned. Although *Heck* is not a bar to civil claims involving *anticipated* or *possible future* convictions, the Supreme Court has held that "[i]f a plaintiff files . . . any . . . claim related to rulings that will likely be made in a pending or anticipated criminal trial[], it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007); *Fox v. DeSoto*, 489 F.3d 227 (6th Cir. 2007). Dumphord has requested that the Court grant a stay of this action pursuant to *Wallace*. Because most, if not all, of Dumphord's civil claims have bearing on the issues involved in the criminal case, the Court concludes that a stay is appropriate.

First, Dumphord claims that the defendants violated his right to be free from the use of excessive force. Typically, a claim for excessive force does not risk invalidating an underlying

state conviction. *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010). However, that is not the case here because excessive force is an affirmative defense to resisting arrest, an offense with which Dumphord is charged. *See Dobson v. Sandidge*, 2021 WL 707657, at *2 (W.D. Ky. Feb. 23, 2021) (citing K.R.S. § 520.090 cmt.). Accordingly, a favorable judgment on Dumphord's excessive force claim (or state-law assault and battery claims) could provide a defense to his resisting arrest charge.

In the same vein, the Court cannot resolve Dumphord's unlawful search and seizure claims without the risk of interfering with the criminal proceeding. Dumphord filed a motion to suppress evidence seized during the traffic stop, which the state court denied. [Record No. 20-5] Dumphord has filed a motion to reconsider that decision, which remains pending. [Record No. 27-3] Inevitably, the state court will be asked to evaluate the same law enforcement actions the plaintiff seeks to challenge here.

As for Dumphord's claim of false imprisonment, he must prove that one or more defendants used force or threats of force to deprive him of his liberty by detaining him against his will. *Banks v. Fritsch*, 39 S.W.3d 474, 479 (Ky. 2001); *Woosley v. City of Paris*, 591 F. Supp. 913, 923 (E.D. Ky. 2008). If an officer acts in reasonable and good faith that a misdemeanor was being committed in his presence, he is not liable for false imprisonment, even if it turns out that his belief was wrong. *Id.* (citing *McCray v. City of Lake Louisvilla*, 332 S.W.2d 837, 842 (Ky. 1960)). Accordingly, resolution of this claim likely would require the finder of fact to determine whether Troopers Gabriel and/or Kenney had a good faith belief that a misdemeanor was being committed in their/his presence. Because the same or similar issues are pending in the defendant's criminal action, it is appropriate to stay resolution of the civil claims until the criminal charges are resolved.

Next, the plaintiff alleges a claim for intentional infliction of emotional distress ("IIED") against Defendant Gabriel.[5]  The elements of IIED are:

> (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against generally acceptable standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe.

*K.K. by and through J.K. v. Clark Cnty. Bd. of Educ.*, 439 F. Supp. 3d 905, 920 (E.D. Ky. 2020) (quoting *Gilbert v. Barkes*, 987 S.W.2d 772 (Ky. 1999)).  It is unclear whether success on an IIED claim would "necessarily imply the invalidity" of a criminal conviction.  *Compare Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 618-19 (6th Cir. 2014) (allowing arrestee's parents to bring IIED claim after police raided their home to arrest son) *and Wyatt v. County of Butte*, 2007 WL 3340947, at *4 (E.D. Cal. Nov. 9, 2007) (IIED claim necessarily implied the invalidity of plaintiff's previous conviction for resisting arrest).  Regardless, the allegations associated with this claim are closely intertwined with Dumphord's § 1983 claims for excessive force and unlawful search and seizure.  Accordingly, a stay of the resolution of the IIED claim is appropriate for the reasons applicable to the preceding claims.

Dumphord also asserts negligence claims under which he contends that Troopers Gabriel and Kenney failed to follow proper policies, procedures, and techniques during their encounter with him on November 15, 2019.  Further, he contends Sergeant Dunaway, Captain Mills, and Commissioner Brewer are responsible for a custom which led to the troopers' use excessive force.  He also asserts these defendants failed to use reasonable care in hiring,

---

[5]  Dumphord concedes that he cannot make out a claim for IIED against Defendants Kenney, Dunaway, Mills, and Brewer.  According, he agrees to dismiss the IIED claims against these defendants.

training, and supervising state troopers. Again, these issues raised by these claims are likely to have substantial overlap with the issues raised in the criminal proceeding against Dumphord. Additionally, the interest of judicial economy weighs in favor of staying these claims along with the others asserted against these defendants. *See Dobson*, 2021 WL 707657, at *4 (considering judicial economy in deciding to stay negligence claim along with other claims).

### B. Claims That Will Be Dismissed

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible upon its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must proceed on the assumption that well-pleaded allegations are true, even if they strike the Court as improbable. *Id.* at 556 (2007). While the Court need not accept legal conclusions or unwarranted factual inferences, the complaint must be construed in the plaintiff's favor. *Sharp v. Ingham Cty.*, 23 F. App'x 496, 498 (6th Cir. 2001). However, the Court will dismiss a complaint if the factual allegations are insufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

#### 1. Plaintiff's Official-Capacity Claims

There is no need to delay ruling on claims involving the defendant's sovereign and/or governmental immunity with respect to the plaintiff's official-capacity claims. Resolution of immunity issues does not relate to matters likely to be before the court in the plaintiff's criminal proceeding and, therefore, can be addressed at this stage.

The Kentucky State Police and Justice and Public Safety Cabinet and Defendants Gabriel, Kenney, Brewer, Dunaway, and Mills (each in his official capacity) have filed a motion to dismiss the Complaint pursuant to Rule 12(b)(6) on the following grounds: the

plaintiff's claims are barred by the Eleventh Amendment to the United States Constitution; they are not "persons" for purposes of 42 U.S.C. § 1983; and they are immune from the plaintiff's state-law causes of action based on sovereign immunity.

"[A]bsent consent, state entities possess Eleventh Amendment immunity from actions asserting a violation of federal civil rights." *McCrystal v. Ky. State Police*, 2008 WL 4975109, at *3 (E.D. Ky. Nov. 20, 2008) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). It is well-established that the Justice and Public Safety Cabinet is a state agency. *See Rollin v. Officer of Comm'r/Dept. of Corrs.*, 2020 WL 3452985, at *2 (W.D. Ky. June 24, 2020) (citing K.R.S. § 12.250(1)). Additionally, "[t]he [Kentucky State Police] is a statutorily-created department within the Justice and Public Safety Cabinet tasked with statewide law enforcement jurisdiction." *Colebrook v. Ky. Dept. of Motor Vehicle Enforcement*, 2009 WL 536600, at *6 (E.D. Ky. Mar. 3, 2009). Thus, the KSP is "unquestionably an arm of the executive branch of the Kentucky state government." *Id.* And KSP employees sued in their official capacity are entitled to the same protection under the Eleventh Amendment. *McCrystal*, 2009 WL 192770, at *1-2; *Scott v. Michigan*, 173 F.Supp.2d 708 (E.D. Mich. 2001).

The plaintiff cites *Mazur v. Woodson* for the proposition that "a suit challenging the constitutionality of a state official's action is not one against the state and is thus permitted under the Eleventh Amendment." 932 F. Supp. 144, 147 (E.D. Va. 1996) (citing *Ex parte Young*, 209 U.S. 123 (1908)). However, the plaintiff fails to acknowledge that this exception to Eleventh Amendment immunity "allows prospective relief but prohibits retroactive monetary relief." *Id.* Based on the plain language of the Complaint, the plaintiff is seeking

only retroactive monetary relief. [Record No. 1, pp. 62-63] Accordingly, the claims are barred by the Eleventh Amendment.

Dumphord also asserts state-law claims against these defendants in their official capacities. Under Kentucky law, state agencies possess governmental immunity from suit when the action is premised on the agency's performance of a governmental (as opposed to proprietary) function. *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001). While sovereign immunity is absolute for the state itself, a state agency's immunity is qualified "to the extent that its existence depends on whether the agency is performing a governmental or proprietary function." *Saunier v. Lexington Center Corp.*, 2020 WL 2781709 (Ky. Ct. App. May 29, 2020) (citing *Yanero*, 65 S.W.3d at 519). And a suit against a police officer in his official capacity is the same as a suit against the agency for which the officer works. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n.2 (1997). Law enforcement functions of the state police and its employees are governmental functions and, therefore, are entitled to immunity with respect to the plaintiff's official capacity claims. *See Todd v. Duvall*, 2019 WL 2353243 (E.D. Ky. June 3, 2019).

Finally, the plaintiff argues that the defendants can be sued through the Kentucky Claims Commission and have waived immunity. [Record No. 22, p. 7] Not surprisingly, the plaintiff has not cited any authority to support this proposition. The plaintiff does cite K.R.S. §§ 49.060 and 49.070, which provide that persons may bring *negligence* claims against the state and its agencies before the Kentucky Claims Commission. However, the statute explicitly states that the provisions do not constitute a waiver of sovereign or governmental immunity. *See* § 49.070(11). Absent an explicit waiver of immunity, the official-capacity defendants are entitled to governmental immunity. *See Ruplinger v. Louisville/Jefferson Cnty. Metro Gov't*,

607 S.W. 583, 585 (Ky. 2020) (observing that only the General Assembly can waive sovereign immunity and explicit waiver is required).

Based on the foregoing, the defendant's motion to dismiss the plaintiff's official-capacity claims will be granted.

### 2.        Malicious Prosecution

A malicious prosecution claim requires the plaintiff to establish, *inter alia*, that "the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff" and that "the proceeding . . . terminated in favor of the person against whom it was brought." *Martin v. O'Daniel*, 507 S.W. 3d 1, 11-12 (Ky. 2016).  Dumphord concedes that he does not have a present cause of action for malicious prosecution since the criminal proceedings against him have not terminated in his favor.  Accordingly, he agrees that his malicious prosecution claims should be dismissed, without prejudice.

### C.        Failure-to-Treat Claims and Motion to Amend Complaint

The plaintiff has asserted claims against Bourbon Community Hospital, LLC ("Bourbon Community") and Sandra Geile, M.D., which are largely unrelated to his claims against the KSP defendants.  In Count VII of the Complaint, styled "Failure to Treat," Dumphord alleges that Geile failed to exercise reasonable care when treating him upon his arrival to the Bourbon Community Emergency Department on November 15, 2019.  [Record No. 1, pp. 60-61]  He simply alleges that Bourbon Community is liable under the doctrine of *respondeat superior*. *Id.* at p. 61.

Despite the plaintiff's repeated attempts to serve Geile with the Complaint, he has been unable to locate her.  He obtained an alias summons for Geile on March 17, 2021, and is

making additional efforts to complete service. Bourbon Community filed a motion to dismiss pursuant to Rule 12(b)(6) on December 18, 2020. [Record No. 17] It contends that the claims against it should be dismissed because Dumphord failed to file a Certificate of Merit with his Complaint as required by K.R.S. § 411.167. Additionally, Bourbon Community contends that Dumphord failed to adequately plead a claim for vicariously liability.

On January 8, 2021, Dumphord filed a motion for leave to file an amended Complaint. [Record No. 32] He seeks to correct the pleading deficiency regarding his *respondeat superior*/vicarious liability claim and add a claim under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. He did not address Bourbon Community's argument regarding his failure to tender a Certificate of Merit.

Dumphord attached to the motion a proposed "First Amended Complaint," which only includes allegations against Geile and Bourbon Community. As for the allegations against the KSP defendants, he "readopts, realleges, and incorporates [them] by reference." [Record No. 32-2] Bourbon Community contends that the Court should reject the proposed pleading because it is defective and the proposed amendments are futile. [Record No. 40]

The Court agrees that the proposed First Amended Complaint is technically deficient because an amended complaint must include all of the plaintiff's allegations instead of merely referring to them by reference. In other words, a plaintiff "may not file a complaint piecemeal by presenting [his] claims and supporting factual allegations in multiple documents, leaving it to the Court and the defendant[s] to piece together [his] claims. Rather, a complaint should include all allegations, claims, and defendants in a single document." *Turner v. Citi*, 2020 WL 4516988, at *3 (E.D. Ky. Aug. 5, 2020).

Notwithstanding this requirement, Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading "once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15(a)(1)(B). Despite his unartful method of doing so, Dumphord *did* file the amendments to his Complaint within 21 days of Bourbon Community's motion to dismiss under Rule 12(b)(6). Contrary to Bourbon Community's suggestion, the Court will not impose draconian sanctions based on this blunder. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.") Bourbon Community has not suggested that it will be prejudiced if Dumphord is permitted to amend the Complaint. Further, allowing amendment promotes resolution of the matter on the merits.

Bourbon Community argues that Dumphord's putative EMTALA claim is baseless and amendment would be futile, but it does not mention the plaintiff's amendments with respect to the vicarious liability claim. Likewise, it does not address the plaintiff's failure to attach a Certificate of Merit to the proposed Amended Complaint. Accordingly, it is unclear whether this is still a contested issue.

Based on the foregoing, Dumphord will be permitted to amend his Complaint. However, *he will only be permitted to amend the allegations concerning Bourbon Community and Dr. Geile as reflected in the "First Amended Complaint" so that the amended complaint is reduced to a single, unified document that comprises the operative pleading.*

To the extent Dumphord seeks to stay his claims against Bourbon County and Geile, it is unclear that these claims are significantly related to the criminal proceeding or why they should be stayed. Should the plaintiff or either of these defendants be aware of reasons that

these claims should be stayed pending resolution of the plaintiff's criminal charges, the parties may advise the Court by filing appropriate motions going forward.

### III.     Conclusion

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. The motion to dismiss official-capacity claims filed by Defendants Justice and Public Safety Cabinet; the Kentucky State Police; Jack Gabriel, Joseph Kenney, Rodney Brewer, Sonny Dunaway; and Chad Mills, [Record No. 8] is **GRANTED**.

2. The plaintiff's motion to stay this civil action [Record No. 27] is **GRANTED**, in part. The plaintiff's individual-capacity claims against Jack Gabriel, Joseph Kenney, Rodney Brewer, Sonny Dunaway, and Chad Mills are **STAYED** pending resolution of the related criminal proceedings against the plaintiff in Bourbon Circuit Court. The plaintiff's claims against Bourbon Community Hospital and Sandra Geile, M.D. are not subject to the stay.

3. The motion to dismiss individual-capacity claims filed by Rodney Brewer, Sonny Dunaway, Joseph Kenney, and Chad Mills [Record No. 19] is **DENIED**, as moot.

4. Defendant Jack Gabriel's motion to dismiss individual-capacity claims [Record No. 20] is **DENIED**, as moot.

5. The plaintiff's claims for malicious prosecution against all defendants are **DISMISSED**, without prejudice.

6. The plaintiff's claims for intentional infliction of emotional distress against Defendants Joseph Kenney, Sonny Dunaway, Chad Mills, and Rodney Brewer are **DISMISSED**, with prejudice.

7. The plaintiff's motion for leave to file an amended Complaint [Record No. 32] is **GRANTED** consistent with the instructions in this Memorandum Order and Opinion. The plaintiff shall have **ten (10) days** to file an amended Complaint.

8. Defendant Bourbon Community Hospital's motion to dismiss [Record No. 17] is **DENIED**, as moot.

9. Plaintiff and the KSP Defendants are directed to file a joint status report within **10 days** of the conclusion of Dumphord's criminal trial in state court or any other resolution of the criminal proceeding.

Dated: March 24, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky