UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BRIAN TODD DUMPHORD | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 20-461-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JACK GABRIEL, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Brian Dumphord brought this action against nine parties (five of which were sued in their individual and official capacities) in November 2020. [Record No. 1] The Court dismissed or stayed Dumphord's claims against the majority of defendants; therefore, only the claims against Defendants Bourbon Community Hospital and Sandra Geile, M.D., are at issue here. [Record No. 61] The following four motions are pending: Geile's motion to dismiss pursuant to Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure [Record No. 65]; Bourbon Community's motion to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Record No. 66]; and Dumphord's second motion for leave to file an amended complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. [Record No. 71]

Dumphord criticizes the defendants for "argu[ing] form over substance."[1]   [Record No. 69, p. 2]   But this line of argument fails to acknowledge that in federal court, "the rules matter."   *ECIMOS, LLC v. Nortek Global HVAC, LLC*, 736 F. App'x 577, 578 (6th Cir. 2018).     Further, "those who fail to follow the rules face consequences."   *Id.*   Here, Dumphord failed to serve Geile within the applicable time limits, abide by the Court's order allowing amendment of the Complaint, and plead a plausible claim to relief.   As a result, and for the reasons explained more fully below, Geile's motion to dismiss will be granted, Bourbon Community's motion to dismiss will be granted, and Dumphord's motion for leave to file an amended complaint will be denied.

## I.

The Court will first consider Geile's motion to dismiss for failure to properly serve her.   [Record No. 65]   "[W]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant."   *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (citations omitted).   Rule 4 of the Federal Rules of Civil Procedure governs service of process.   It permits several methods of service, including: (1) following the law governing service of the state where the district court is located or where service is made; (2) personal delivery of the summons and complaint; (3) delivery at "the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there;" or (4) delivery to an authorized agent.   Fed. R. Civ. P. 4(e).

---

[1]     By "form," the Court assumes he is referring to the Federal Rules of Civil Procedure and orders of the undersigned.

Absent a waiver, a plaintiff must provide proof of service.  Fed. R. Civ. P. 4(*l*); *see also Sawyer v. Lexington-Fayette Urban Cty. Gov't*, 18 F. App'x 285, 287 (6th Cir. 2011) ("[The plaintiff] bears the burden of perfecting service of process and showing that proper service was made.").  And "[v]alid proof of service on the record creates a rebuttable presumption of valid service."  *T.J. v. Franklin Indep. Schs.*, 2018 U.S. Dist. LEXIS 145329, at *5 (E.D. Ky. Aug. 27, 2018) (citations omitted).  But when service of process is insufficient, a defendant may move to dismiss the action.  Fed. R. Civ. P. 12(b)(5).

A summons for Geile was first issued on November 15, 2020, and returned unexecuted three days later.  [Record Nos. 3-7; 6-7] It listed an office address in Harrodsburg, Kentucky.  [*Id.*]  On the same day the first summons was returned unexecuted, a second summons bearing the same address and the address of CT Corporation System was issued.  [Record No. 7-7] Dumphord later filed an affidavit of service, indicating that "CT Representative" Susan Johnson—listed as a registered agent—received service on Geile's behalf on November 30, 2020.  [Record No. 11] But CT Corporation was not Geile's registered agent, so that summons was returned unexecuted on January 6, 2021.  [Record No. 25]

The Clerk of the Court issued the third summons—bearing a new Lexington, Kentucky address—on January 7, 2021.  [Record No. 26] It too was returned unexecuted. [Record No. 41].  The next day, Dumphord filed two motions seeking, respectively, a 45-day extension of time to serve Geile and the appointment of the U.S. Marshals Service to complete service.  [Record Nos. 43; 44]  The motion indicated that a private investigator

- 3 -

was unable to effect service of process on Geile for several reasons.  [Record No. 43] The Court extended Dumphord's deadline to serve Geile to April 2, 2021, but denied his request to have the U.S. Marshals Service complete service.  [Record No. 47] Additionally, a fourth summons listing the Harrodsburg address present on the first and second summonses was issued.  [Record No. 46]

The record reflects that Dumphord twice attempted service *via* certified mail. [Record Nos. 49; 62] Kentucky law requires that an individual receive a copy of the summons and complaint personally or through an authorized agent. Ky. R. Civ. P. 4.04(2). The delivery can occur through certified mail. Ky. R. Civ. P. 4.01(1)(a).  The certified mail must be sent "with instructions to the delivering postal employee to deliver to the addressee only and show the address where delivered and the date of delivery." *Id.*  A return receipt is "proof of the time, place and manner of service." *Id.*

Dumphord's first attempt at service *via* certified mail was delivered to the Harrodsburg address listed on the fourth summons.  [Record No. 49]  It was signed by Alana Spaulding on February 17, 2021.  [*Id.*] But Spaulding is not Geile's registered agent, and Dumphord learned that Geile no longer worked at the Harrodsburg address.  [Record No. 56]  As a result, on March 12, 2021, Dumphord requested a fifth summons, which listed an address in Lexington that Dumphord found on the Kentucky Board of Medical Licensure's website.  [*Id.*]

The fifth and final summons was issued on March 17, 2021.  [Record No. 60]  A certified mail return receipt was filed in the record on March 26, 2021.  [Record No. 62]

- 4 -

On the signature line, it states "Covid-19." [*Id.*]  The line labelled "Received by" includes two illegible marks, likely initials, and the "Date of Delivery" line is left blank.  [*Id.*]  Dumphord argues that Geile was properly served on this final attempt.[2]  [Record No. 67]  But Geile argues that she has yet to be properly served.[3]  [Record Nos. 65; 68]

Dumphord has failed to prove that Geile was properly served within the deadline. Two pieces of evidence show that proper service was not made: (1) the return receipt with no name or date which includes a signature line reading "Covid-19"; and (2) a sworn affidavit from Geile, stating that the summons and complaint were not personally delivered to her.  [Record Nos. 62; 65-6]  First, Dumphord has offered no argument or evidence that a certified mail return receipt that simply states "Covid-19" constitutes proper service.  *See, e.g.*, *First Acceptance Ins. Co. v. Rosser*, 2021 U.S. Dist. LEXIS 95631, at *8–9 (M.D. Ala. May 19, 2021) (finding insufficient proof of service absent "additional evidence to prove that service was proper" where receipt stated "Covid 19"); *Cunningham v. Matrix Fin. Servs.*, 2021 U.S. Dist. LEXIS 62513, at *10–11 (C.D. Cal. Feb. 4, 2021) (same); *but see Macias v. Grange Ins. Co.*, 2020 U.S. Dist. LEXIS 151780, at *6 (W.D. La. Aug. 20, 2020) (finding proper service when receipt stated "ST 102 C19" where plaintiff provided evidence of delivery and pandemic-related practices from the Postal Service).  Without

---

[2]     Dumphord also states that "she was even served at her last known office address." [Record No. 67, p. 20] It is unknown which address he is referring to, inasmuch as he has presented no proof of successful service at any office address.

[3]     Geile's motion misstates the deadline for service, which was extended to April 2, 2021, by the Court's February 11, 2021 Order.  [Record No. 65, p. 6]  The response acknowledges and corrects this oversight.  [Record No. 68, pp. 10–11]

more, the Court cannot rely on the certified mail return receipt to conclude that Geile was properly served *via* certified mail.

Dumphord also appears to suggest that Geile must have been properly served because "the Defendant, Bourbon County Hospital, has been serving Dr. Geile filings at her last known office address." [Record No. 67, p. 20] But this argument fails to recognize that Geile's "full awareness that [she] had been sued makes no legal difference to the question of whether [she] was properly served." *King*, 694 F.3d at 655–56 (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991)). Unfortunately for Dumphord, arguments without evidence do not constitute proof of proper service.

When a defendant is not served within the applicable time limit, Rule 4 allows the Court to "dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). And the Court must extend the time for service if the plaintiff can show good cause. *Id.* The Court granted one extension for good cause in this matter, but Dumphord has not demonstrated that another extension is appropriate. Rather, dismissal without prejudice is proper.

Dumphord "bear[s] the burden of showing good cause." *Friedman*, 929 F.2d at 1157 (citing *Norlock v. City of Garland*, 768 F.2d 654, 656 (5th Cir. 1985)). He mainly relies on an accusation that "Geile was avoiding service." [Record No. 67, p. 20] And he has made this accusation before. [Record No. 44] Like the last time he raised this issue, Dumphord offers no evidence that Geile evaded service. Instead, he asks the Court to

conclude that, because Geile "is no stranger to receiving process," and because several attempts were unsuccessful here, she must have been avoiding service.

His argument overlooks the overwhelming evidence that he failed to serve process due to his own mistakes. As Geile notes, her actual address is readily available "and can be accessed online in less than a minute." [Record No. 65, p. 7] In addition to having easy access to this information, Dumphord hired a private investigator to serve Geile in January. [Record No. 43-2] Yet each of the first four summons he requested listed incorrect addresses, and it was not until March that Dumphord requested a fifth summons with the correct address. With the proper address in hand, he then attempted service *via* certified mail. But he made the unreasonable choice to conclude that a return receipt bearing no signature and no date was sufficient, rather than attempting to serve Geile by another method before the April 2, 2021, deadline. In short, Dumphord has been given numerous opportunities to comply with Rule 4 and complete proper service, but he failed to do so. Accordingly, the Court will dismiss his claims against Geile without prejudice. Fed. R. Civ. P. 4(m).

## II.

Next, the Court turns to the motions related to claims remaining against Defendant Bourbon Community. To summarize these proceedings so far: Dumphord sued Bourbon Community in November 2020, alleging it was liable under the doctrine of *respondeat superior* for Geile's failure to provide treatment. [Record No. 1, ¶¶ 347–52] Bourbon Community moved to dismiss that claim. [Record No. 17] However, before that motion

became ripe, Dumphord moved to amend his Complaint as a matter of right to allege that Bourbon Community was liable under the Emergency Medical Treatment and Active Labor Act ("EMTALA"). [Record No. 32] The Court granted his request,[4] but included a specific instruction:

> Dumphord will be permitted to amend his Complaint. However, *he will only be permitted to amend the allegations concerning Bourbon Community and Dr. Geile as reflected in the "First Amended Complaint" so that the amended complaint is reduced to a single unified document that comprises the operative pleading.*

[Record No. 61, p. 14 (emphasis in original)] Dumphord had incorrectly included only the new allegations in his proposed First Amended Complaint, when he should have simply re-filed the entire Complaint with the new allegations incorporated, so this instruction was required.

In the Court's limiting instruction, Dumphord saw an open invitation. In his telling, he added "additional claims against Dr. Geile" and "some minor new language to restate the same allegations" found in the proposed amended complaint. [Record No. 78, p. 2] He

---

[4]      Because Dumphord's request to amend his Complaint was granted, Bourbon Community's original motion to dismiss [Record No. 17] was denied as moot. [Record No. 61, p. 16]  "[A]mended complaints supersede the original pleading," so "the filing of the amended complaint in this case did technically render the pending motion to dismiss moot." *Yates v. Applied Performance Techs., Inc.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002). In several filings, Dumphord suggests that Bourbon Community's current motion to dismiss should be denied simply because its first motion was already denied. [*See* Record Nos. 69 pp. 2, 7, 20; 78, p. 3.] But Dumphord misunderstands both the basic proposition that an amended complaint generally moots pending motions to dismiss and the scope of the Court's previous order. The Court has never addressed or decided the merits of Bourbon Community's motion to dismiss, and its current motion is not a renewed motion or, as Dumphord calls it, "a second bite at the apple." [Record No. 78, p. 3]  Instead, because there was a new operative complaint, Bourbon Community filed a new motion to dismiss.

claims he "didn't add any addition allegations to his Unified Amended Complaint, he just re-stated them in clearer language." [Record No. 69, p. 4] But Bourbon Community points to six paragraphs containing new allegations and contends that Dumphord "changed the manner in which he pleads the medical negligence and EMTALA claims" by turning what was a single count into two separate counts. [Record No. 66, pp. 6–7]

Dumphord admits that he did not amend his Complaint "*as reflected*" in the document previously filed. [Record No. 61, p. 14 (emphasis in original)] He simply claims that he added "some minor new language to restate the same allegations . . ." [Record No, 78, p. 2] The Court is thus left with a First Amended Complaint filed in a manner inconsistent with an earlier Order, a motion to strike the new language in the First Amended Complaint and dismiss the claim against Bourbon Community, and a motion for leave to file a Second Amended Complaint identical to the First Amended Complaint. Each motion is ripe.

### a. Motion to Strike

Bourbon Community first asks that the Court strike the language Dumphord added to his First Amended Complaint. [Record No. 66, pp. 5–8] Rule 12 permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "courts tend to disfavor motions to strike and they are infrequently granted, because a motion to strike proposes a drastic remedy." *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 801 (E.D. Mich. 2015) (quotations omitted).

A ruling on this issue is unnecessary.  In one filing, Dumphord states that he moved to amend his First Amended Complaint by filing the identical proposed Second Amended Complaint to "promote judicial economy, prevent the need for unnecessary back and forth between the parties,[5] and make sure that any additional language include[d] in the Unified Amended Complaint comported with the applicable rules of procedure."  [Record No. 77, p. 3]  This language and the filing of a motion for leave to amend his First Amended Complaint suggest that there is no dispute over whether language was added to the First Amended Complaint.  But because motions to strike are disfavored and this matter can be resolved without a ruling on this motion, the Court will proceed to consideration of the pending motion to dismiss and motion for leave to file an amended complaint.

**b.  Motion to Dismiss**

Next, Bourbon Community moves to dismiss the claims brought against it: Count XVII's "Failure to Treat" claim and Count XVIII's EMTALA claim.  [Record No. 66, pp. 8–16]  Federal pleading standards demand "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Dismissal is appropriate where a party fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In reviewing a motion to dismiss, the Court must accept all "well-pleaded factual allegations" as true and "determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

---

[5]     Dumphord waited until the motion to strike was fully briefed before filing this motion, so it is unclear what "unnecessary back and forth" was avoided.

But a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Rather, it must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570)).  This standard requires "either 'direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'"  *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 772 (E.D. Ky. 2017) (quoting *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)).  Dismissal pursuant to Rule 12(b)(6) is appropriate when this standard is not satisfied.

### 1.  "Failure to Treat" Claim

The first claim Dumphord brings against Bourbon Community is for negligent failure to treat.   [Record No. 63, ¶¶ 368–74]  Under Kentucky law, plaintiffs bringing negligence or malpractice claims against a hospital under Ky. Rev. Stat. § 413.140(1)(e) "shall file a certificate of merit with the complaint in the court in which the action is commenced."  Ky. Rev. Stat. § 411.167(1).   The statute also provides that, "in lieu of serving a certificate of merit," the plaintiff "may provide the defendant or defendants with expert information in the form required by the Kentucky Rules of Civil Procedure."  Ky. Rev. Stat. § 411.167(7).  There is no dispute that Dumphord did not comply with either requirement, so Bourbon Community argues that this claim should be dismissed.

Dumphord makes two arguments in response to Bourbon Community's motion. First, he contends that subsection 411.167(7) exempts him from filing a certificate of merit,

so long as he eventually provides expert information.  [Record No. 69, pp. 7–11]  In his view, the lack of a specific time frame in that subsection means that the legislature intended to allow plaintiffs to provide the information any time after the filing of the complaint.[6] [*Id.*]  But "[s]tatutes should be construed in such a way that they do not become ineffectual or meaningless," and "[a]ny apparent conflict between sections of the same statute should be harmonized if possible so as to give effect to both sections." *Lewis v. Jackson Energy Coop. Corp.*, 189 S.W.3d 87, 91 (Ky. 2005) (citations omitted).

Dumphord's reading of the statute would render the certificate of merit requirement both ineffectual and meaningless.  A proper reading of the statute, as a whole, indicates that before filing a complaint, plaintiffs have the choice to either file a certificate of merit *or* provide the defendants with expert information "in lieu of serving a certificate of merit." Ky. Rev. Stat. § 411.167(7).  If plaintiffs could take advantage of subsection 411.167(7)'s exception at any time, the central requirement of the statute—that a certificate of merit be filed at the same time as the complaint—could be ignored in every case.   Dumphord has provided utterly no support for his argument that the Kentucky General Assembly intended that result.

Without the ability to rely on subsection 411.167(7), Dumphord is left to argue that the statute violates sections 14 and 59(5) of Kentucky's constitution.  [Record No. 69, pp. 11–18]  His entire argument rests on *Commonwealth v. Claycomb*, in which the Supreme

---

[6]     Dumphord suggests that if the Court is unsure how the language should be interpreted, the question should be certified to the Supreme Court of Kentucky.  [Record No. 69, pp. 10–11]  The Court declines this invitation.

Court of Kentucky held that the 2017 Medical Review Panel Act was unconstitutional.  566 S.W.3d 202, 204 (Ky. 2018).  There, the majority held that the act "delays access to the courts" by requiring medical review panels to review malpractice complaints before filing, in violation of Section 14.  *Id.* at 204–05.  In concurrence, Justice Cunningham argued that Section 59(5), which prohibits "special legislation," was the proper source of the constitutional violation.  *Id.* at 218–19 (Cunningham, J., concurring).

While he quotes at length from both the majority and concurring opinions, Dumphord never explains why *Claycomb*'s opinions render Section 411.167 unconstitutional.  First, the cases are distinguishable.  The Medical Review Panel Act required a plaintiff to either submit his claims to a medical review panel or secure the agreement of the adverse parties to bypass that process.  *Claycomb*, 566 S.W.3d at 205. The Supreme Court of Kentucky held that this provision effectively blocked access to "the adjudicatory method of his or her choosing at the time of his or her choosing."  *Id.* at 213. The delay here, caused by any time required to obtain a certificate of merit or comply with the statute's requirements in another way, is more similar to a delay "inherent in every adjudicatory proceeding."  *Id.*

Additionally, Dumphord's argument that the statute violates section 59(5) is based on a single-justice concurrence, not binding authority.  As Bourbon Community notes, a more recent opinion identifies "the correct test" for violations of Section 59.  *Calloway Cty. Sheriff's Dep't v. Woodall*, 607 S.W.3d 557, 573 (Ky. 2020).  He has not argued that this statute would fail under that test.  In short, Dumphord's constitutional arguments are

unsupported, and his noncompliance with Section 411.167's requirements warrant dismissal of his first claim against Bourbon Community. [7]

### 2. EMTALA Claim

Bourbon Community also contends that Dumphord has failed to state a claim to relief under EMTALA.  That statute provides that, "for any individual who seeks treatment in a hospital, the hospital must determine whether an 'emergency medical condition' exists, and if the hospital believes such a condition exists, it must provide treatment to 'stabilize' the patient." *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 579 (6th Cir. 2009) (quoting *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1134 (6th Cir. 1990); *see also* 42 U.S.C. § 1395dd(a)–(b).  To determine whether an emergency medical condition exists, the hospital must conduct an "appropriate medical screening."   42 U.S.C. § 1395dd(a).  That phrase has been defined as "a screening that the hospital would have offered to any paying patient." *Cleland v. Bronson Health Care Grp.*, 917 F.2d 266, 268–69 (6th Cir. 1990).

A plaintiff must provide "evidence of disparate treatment based on improper motive" to succeed on an EMTALA screening claim. *Estate of Lacko v. Mercy Hosp.*, 829 F. Supp. 2d 543, 549 (E.D. Mich. 2011) (collecting cases); *see also Romine v. St. Joseph Health Sys.*, 541 F. App'x 614, 620 (6th Cir. 2013).  Dumphord points to two Kentucky

---

[7]    A recent Sixth Circuit opinion held that Ohio's similar affidavit of merit requirement did not apply to a medical malpractice claim brought pursuant to the Federal Tort Claims Act. *See Gallivan v. United States*, 943 F.3d 291, 293–94 (6th Cir. 2019).  Dumphord did not address *Gallivan*'s applicability to this case or suggest that Kentucky's requirement is inapplicable under the Federal Rules of Civil Procedure.  Accordingly, he has waived the issue. *See Estate of Barnwell v. Grigsby*, 801 F. App'x 354, 361 n.4 (6th Cir. 2020).

cases to argue that this requirement does not apply. [Record No. 69, p. 19]  In addition to being distinguishable, these cases do not bind the Court in its application of a federal statute. Instead, where binding Sixth Circuit precedent requires a plaintiff to demonstrate improper motive to succeed on an EMTALA screening claim, he must do so. Dumphord did not allege any improper motive here, so he has failed to state a claim to relief under EMTALA's screening provision.

The statute also requires a hospital to stabilize a patient's medical condition if it determines that an emergency medical condition exists. 42 U.S.C. § 1395dd(b). To state a stabilization claim, Dumphord must allege that Bourbon Community determined he had an emergency medical condition. *Id.* However, the "duty to stabilize is not triggered absent actual knowledge of an emergency medical condition." *Taylor v. Jewish Hosp. & St. Mary's Healthcare, Inc.*, 26 F. Supp. 3d 642, 650 (W.D. Ky. 2014).

Allegations of failure to detect the emergency medical condition or of misdiagnosis of the emergency medical condition are insufficient under EMTALA. *Moses*, 561 F.3d at 585; *Cleland*, 917 F.2d at 271. Here, Dumphord argues only that Geile should have, but did not, discover a fracture in his wrist and forearm. [Record No. 69, p. 20]  But these allegations of negligence are "reserved for state malpractice law," not EMTALA stabilization claims. *Moses*, 561 F. 3d at 585 n.1. Without allegations of actual knowledge, Dumphord has also failed to state a claim to relief under EMTALA's stabilization provision. Bourbon Community's motion to dismiss this claim will be granted.

- 15 -

### c. Motion for Leave to File an Amended Complaint

Finally, Dumphord has also filed a motion for leave to file a Second Amended Complaint.  [Record No. 71]  Rule 15 of the Federal Rules of Civil Procedure states that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But denial of leave is appropriate where the amendment would be futile.  *See Forman v. Davis*, 371 U.S. 178, 182 (1962).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010)).

As noted above, the proposed Second Amended Complaint is identical to Dumphord's First Amended Complaint.  Thus, the 12(b)(6) analysis in the preceding section applies with equal force to the Second Amended Complaint.  Like the First Amended Complaint, it does not comply with Ky. Rev. Stat. § 411.167's requirements and fails to state a claim to relief under EMTALA.  Accordingly, the motion for leave to amend will be denied because the amendment would be futile.

### III.

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** as follows:

1.    Defendant Sandra Geile, M.D.'s motion to dismiss [Record No. 65] is **GRANTED**.

2.      Defendant Bourbon Community Hospital's motion to strike [Record No. 66] is **DENIED**, as moot.

3.      Defendant Bourbon Community Hospital's motion to dismiss [Record No. 66] is **GRANTED**.

4.      Plaintiff Brian Dumphord's motion for leave to file an amended complaint [Record No. 71] is **DENIED**.

5.      Plaintiff Brian Dumphord's claims against Defendant Sandra Geile, M.D., are **DISMISSED**, without prejudice, and his claims against Defendant Bourbon Community Hospital are **DISMISSED**, with prejudice.

Dated:  August 12, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky